CANTON COTTON MILLS v. SOUTHWEST OVERALL CO.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1925.)

No. 6864.

1. Sales 52(2)—Notations made on sale contract by seller's agent without knowledge of buyer held properly excluded.

In action by seller for breach of alleged sale contract, evidence that material notations on contract were made by clerk in office of seller's agent held irrelevant and immaterial, where neither it nor the facts, other than those disclosed without it, were communicated or known to buyer before it declined to make and perform proposed contract.

2. Sales 23(4)—Conditional acceptance of buyer's order held not to make contract.

Where buyer's order was accepted by agent subject to seller's acceptance, and seller conditioned its acceptance as to times of deliveries and terms of payment, and later its agent made the additional condition that the buyer establish a line of credit, held, there was no contract; the minds of the parties having never met.

3. Sales 22(4), 23(4)—Acceptance of offer must be clear, and without material condition or change.

The acceptance of an offer, indispensable to close a contract of purchase, must be clear, plain, and without material conditions or modifications; acceptance on new or modified terms being a rejection and proposal of new contract.

4. Sales 53(2)—Where evidence is in writing, court must determine issue of contract or no contract.

Where all the competent evidence in action for breach of alleged sale contract was in writing, it was duty of court to determine whether writings constituted contract, and refusal to submit question to jury was not error.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by the Canton Cotton Mills against the Southwest Overall Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Richard S. Righter, of Kansas City, Mo. (Thomas H. Reynolds, of Kansas City, Mo., and H. M. Stephens, of New York City, on the brief), for plaintiff in error.

Edmund H. McVey, of Kansas City, Mo. (Samuel R. Freet, of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. This is an action of the Canton Cotton Mills, a corporation, against the Southwest Overall Company, a corporation, for damages for the breach by the latter of its alleged contract to purchase "50 bales 2.20 Canton denims, equal weekly deliveries March, April, May, June," 1919, at 35 cents a yard, and the error in the trial assigned is that the court below, at the close of the evidence for the plaintiff, sustained a demurrer thereto and directed a judgment for the defendant,

because in its opinion the evidence failed to prove the meeting of the minds of the parties, indispensable to a valid contract, upon (1) the times of delivery of the goods and (2) the times and terms of the payment therefor.

The Mills was a manufacturer of cotton denims at Canton, Ga. The Farish Company was a corporation, a broker, whose principal place of business was in New York City. It was in 1918 the exclusive agent of the Mills for the sale on commission of its entire production. It submitted the orders it obtained from prospective purchasers to the Mills and the latter accepted or declined them. The Overall Company was a wholesale merchant doing business in Kansas City, Mo. The evidence pertinent to the issue, contract or no contract, was in writing and consisted of letters and telegrams, the relevant parts of which are these:

On December 19, 1918, the Farish Company telegraphed the Overall Company: "We offer subject mills acceptance Canton denims equal weekly deliveries March April May June two twenty thirty-five cents. * * * "

The Overall Company answered on December 20, 1918: "Book us fifty bales two twenty Canton as per your telegram nineteenth delayed."

On December 21, 1918, the Farish Company replied, "We confirm fifty bales Canton two twenty per your wire," and on December 23, 1918, wrote, "In accordance with your telegram, we are entering your order for 50 bales Canton 2.20 denims, as per duplicate herewith inclosed. * * * "

The duplicate inclosed contained the terms which raise the first question in this case, the question whether or not there ever was the essential meeting of the minds of the parties upon the times of the delivery of the goods. It was dated December 23, 1918, entitled "Order for Southwest Overall Company," and contained these terms: "When ship equal weekly dely March to June, inclusive. Terms 2%—70-day acceptance at mill door with freight allce. to at mill."

Then followed the description of the goods, the price and other matter not pertinent here and these words and figures: "16 bales April, 17 bales May, 17 bales June (as per Mills' letter 12–23–18) (subject to Mills' acceptance)."

On January 6, 1919, the Farish Company wrote the Overall Company: "We are pleased to inform you of the acceptance by Canton Cotton Mills of your valued order of 23rd ultimo for the following: 50 bales Canton 2.20, W. B. indigo denim @ .35. * * * Shipments 16 bales April—17 bales May—17 bales June—equal weekly delivery March to June, inclusive."

On the same day the Farish Company wrote another letter to the defendant, which raised the second question, whether or not the minds of the parties ever met upon the times or terms of payment. That letter was dated January 6, 1919, was addressed to the Overall Company and contained these words:

"Gentlemen: Your order of the 23d ult. for 50 bales Canton denims, approximate value $19,000, has come to the writer for his attention. We are accepting this order with the understanding that it will be subject to a line of credit which will be hereafter assigned to your firm. This line of credit, of course, will be determined largely by the showing made in your latest financial statement, which we presume will be as of the 1st inst., and, this being the case, we are writing to request that you favor us with a copy of this financial statement as soon as it is ready."

There was no farther correspondence between the Farish Company or the Mills and the Overall Company until January 28, 1919, when the latter wrote the former as follows:

"We are in receipt of your letter of recent date, in which you accept our order for 50 bales Canton denim conditionally. We also notice that, instead of commencing shipments in March as per your offer, you are now offering shipments commencing April 1st, extending to July 1st. This is not satisfactory to us, and since you have seen fit to accept the order conditionally and on different terms of delivery from your offer, we will cancel the same, and trust to good fortune in being able to buy as we need the denims."

There was other evidence in the case, but none competent substantially to affect the conclusion that must be deduced from that which has now been recited. For example, there was evidence that on December 27, 1918, the Mills wrote the Farish Company, its agent, that some of its orders seemed to be mixed up as to dates of shipments and specified: "Order 5736, Southwest Overall Company, fifty bales of 2.20; you wired this in, April, May, and June. Your former order calls for equal weekly delivery, March to June, inclusive."

And the Farish Company, on December

31, 1918, wrote the Mills: "We have to advise that you will kindly disregard the telegraphic instructions and enter these orders for shipment as per notations appearing on the contract."

[1] There was also evidence to the effect that Miss Emerson, a clerk in the office of the Farish Company, wrote the words and figures "16 bales April, 17 bales May, 17 bales June, as per Mills letter 12–23–18," on the order of December 23, 1918. All this evidence, however, was irrelevant and immaterial, because neither it nor the facts other than those disclosed without it were communicated or known to the Overall Company before it declined to make and to perform the proposed contract.

[2] Counsel for the plaintiff argue that these four documents proved a concluded contract to purchase: First, the Farish Company's telegraphic offer of December 19, 1918, subject to Mills' acceptance, of the denims, equal weekly deliveries March, April, May, and June at 35 cents per yard; second, the Overall Company's direction of December 20, 1918, to book for it 50 bales of the denims; third, the Farish Company's telegram of December 21, 1918, "We confirm fifty bales Canton two twenty per your wire," and, fourth, the letter of the Farish Company of January 6, 1919, notifying the Overall Company of the Mills' acceptance of its order, "Shipments 16 bales April—17 bales May—17 bales June, equal weekly delivery March to June, inclusive." If the Farish Company's offer of December 19, 1918, had not contained the express condition "subject to Mills' acceptance," if that company's authority to sell had not been limited thereby and by the established course of its business with the plaintiff to making offers of sale for the Mills and reporting to it prospective purchaser's proposals, subject to its acceptance or declination, if the duplicate order sent with the letter of the Farish Company of December 23, 1918, had not contained the words and figures, "16 bales April, 17 bales May, 17 bales June," nor the words, "Terms 2%—70-day acceptance at mill door with freight allce. to at mill" if the Farish Company's notice of the acceptance of the Mills, dated January 6, 1919, had not also contained the words and figures, "Shipment 16 bales April—17 bales May—17 bales June," and if the Farish Company had not written its second letter to the defendant on January 6, 1919, to the effect that it was accepting the order of the defendant with the understanding that it would be subject to a line of credit which

it would assign to the defendant at some future time, there might be persuasive force in this argument.

But the offer of the Farish Company was "subject to Mills' acceptance" when made, and continued so to be to the end of the negotiations. The defendant's order of December 20, 1918, to book for it "fifty bales two twenty Canton as per your telegram," and the Farish Company's answer of December 21, 1918, "We confirm fifty bales Canton two twenty per your wire," were all subject to the Mills' acceptance. If the Mills had accepted the proposal of the defendant to purchase unconditionally on December 20, 1918, there would undoubtedly have been a valid contract of purchase, and the terms of payment would have been cash on delivery by legal presumption. The Mills never so accepted the defendant's proposal. On the other hand, by the communications which have been recited, it conditioned its acceptance with the requirement that the terms of shipment should be changed from "equal weekly deliveries March, April, May and June," which it had offered and on which the defendant's proposal to purchase was based, to "16 bales April—17 bales May—17 bales June, equal weekly delivery March to June, inclusive," with the requirement that the terms of payment of the purchase price should be changed from the presumptive cash on delivery to "2%—70-day acceptance at mill door with freight allce. to at mill," and with the requirement that its acceptance should be conditioned by the line of credit which the Farish Company should at some future time allow to it. To these modifications of its proposal to purchase the defendant never consented. The minds of the parties never met upon them. There is no logical or rational escape from the conclusion that these proposed modifications were material departures from the terms of the defendant's proposal to purchase the denims, and they made the Mills' alleged acceptance of it a clear rejection thereof.

[3] The acceptance of an offer indispensable to close a contract to purchase must be clear, plain and without material conditions or modifications. An acceptance on new or modified terms or conditions is a rejection and the proposal of a new contract, and the contention of plaintiff's counsel here cannot be sustained. Minneapolis & St. Louis Railway v. Columbus Rolling Mills, 119 U. S. 149, 151, 7 S. Ct. 168, 30 L. Ed. 376; Young's Market Co. v. Pioneer Produce Co., 192 F. 822, 823, 824, 113 C. C. A. 146;

Scott v. Davis, 141 Mo. 213, 225, 42 S. W 714; Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S. W. 398.

[4] Counsel for the plaintiff also contend that the proposed modifications of the defendant's offer to purchase were ambiguous, that the intention of the parties became material and that the question whether or not a valid contract of sale was made should have been submitted to the jury. But if they were ambiguous then they did not constitute a clear acceptance of the proposal and did not close the contract. There was but a single issue in this case. That issue was whether or not the minds of these parties met and consented to. the terms of a valid contract. All the competent evidence upon that subject was in writing. It is an established rule of law that it is the duty of the court and not that of the jury to interpret such writing, and to determine whether or not they constitute a contract, and there was no error in its refusal to submit those questions to the jury.

The judgment below must be affirmed; and it is so ordered.