Isidob Wasservogel,
Spec. Ref. Plaintiff landlord seeks to recover the reasonable value of restoring a portion of its premises to their original condition after the same were surrendered by the defendant tenant at the termination of its lease.
None of the material facts are in dispute. The record shows that on October 28, 1946, plaintiff’s predecessor, as landlord, entered into a 10-year lease with defendant for 10 floors in an office building located at No. 2 Lafayette Street, New York City. When defendant first took possession of said premises, there were separate lavatories for men and women on each floor. Shortly thereafter, with the knowledge and consent of the landlord, defendant made certain alterations, the result of which was to convert the two separate lavatories on each of its leased floors into one large women’s lavatory.
In or about June, 1951, No. 2 Lafayette Street was conveyed to plaintiff herein, subject to the terms of defendant’s lease. It is conceded by plaintiff that at the time it purchased these premises, no one in its behalf inspected the physical layout of the 10 floors leased by defendant or made any inquiry on the subject of either the prior owner or defendant. Plaintiff also admits that it had no knowledge of the condition of the lavatories on the 10 floors here involved as they existed prior to defendant’s alterations thereof, but claims that its representa^ *662 tives examined floor plans which indicated separate toilet facilities for men and women on each floor.
Paragraph á of the defendant’s lease significantly provides that all alterations became the property of the landlord unless it otherwise elected prior to the expiration of the lease, upon due notice thereof to defendant. Plaintiff gave no such notice nor did it demand at any time prior to the termination of the lease that the premises be restored to their original condition. Subsequent to the surrender of the leased space, however, plaintiff made certain alterations which, in effect, reinstated the separate lavatories for men and women on each floor. It is the cost of this work that plaintiff seeks to recover in this action.
It is plaintiff’s contention that paragraph 23 of the lease, which provides, in substance, that the demised premises be surrendered “in good order and condition,” must be construed to obligate defendant to restore such premises to their original condition. Plaintiff further contends that independent of any covenant in the lease, there was an implied obligation on the tenant to restore the premises at the end of the term to substantially the same condition they were in when first leased, subject only to reasonable use. Such contentions are without merit.
The only reference in the lease to the condition of the premises at the end of the term is set forth in paragraph 23 as follows: “Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and condition, ordinary wear excepted. Tenant shall remove all property of Tenant as directed by landlord * * * Tenant’s obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this lease.”
There is no claim here that the demised premises were physically damaged in any respect or that the defendant left them otherwise than “broom clean.” Likewise, plaintiff does not assert that the leased space was not “ in good order and condition ” in the ordinary sense and meaning of the phrase. In the opinion of the court, therefore, defendant surrendered the premises in accordance with the terms set forth in paragraph 23 of the lease.
Similar provisions respecting the phrase “ good order and condition” have been the subject of considerable litigation in the courts of this State. Contrary to plaintiff’s contention, an examination of the reported cases fails to disclose any instance where such language was construed as an obligation to remove properly authorized and properly constructed alterations and *663 to restore the premises to the conditions originally existing at the commencement of the lease. On the contrary, the reported cases require only that a tenant repair and restore actual injury, physical damage, deterioration or waste of the premises caused by the tenant (see Appleton v. Marx, 117 App. Div. 206, affd. 191 N. Y. 81; Bushwick Realty Co. v. Sanitary Fireproofing & Contr. Co., 129 App. Div. 533; Schwegler Realty Co. v. Audubon Nat. Bank, 88 Mise. 14; Friedmann v. Margiotta, 53 N. Y. S. 2d 79; Tanenbaum v. Berkowitz, 173 N. Y. S. 802).
The cases of Woollard v. Schaffer Stores Co. (272 N. Y. 304): Ayen v. Schmidt (80 Misc. 670); Wotton v. Wise (15 Jones & Sp. 515), and Megerell v. State of New York (46 N. Y. S. 2d 685), cited by plaintiff, are clearly distinguishable from the instant action. In each of these cited cases, unlike the facts here agreed upon by the parties, the tenant made alterations to or removals from the leased premises without the consent of the landlord. These cases, therefore, are clearly not applicable to the one at bar.
It is significant that there is nothing in the lease here involved which expressly requires defendant, at the termination thereof, to restore the demised premises to the same condition in which they formerly were, ordinary wear and tear excepted. Therefore, the case of Lazarus v. Ludwig (45 App. Div. 486) and other cases cited by plaintiff involving leases with express covenants to restore the premises to their original condition are not relevant to this action.
As heretofore noted, the lease between plaintiff’s predecessor and defendant specifically gave the tenant the right to make alterations with the landlord’s consent. Moreover, the alterations here involved were made at the beginning of the leased term with this necessary approval and consent. Significantly, under the lease, these alterations became the landlord’s property and were required to remain upon and to be surrendered with the leased premises, as a part thereof, at the end of the term. As heretofore stated, the lease also gave the landlord the opportunity to elect otherwise with respect to the ownership of these alterations upon due notice to defendant. Concededly, no such election was made. Under these circumstances, I hold that defendant properly surrendered the alterations as part of the premises at the termination of its lease. To have done otherwise and to have removed these alterations would have rendered defendant liable to plaintiff for the reasonable value thereof, inasmuch as it must be deemed that these alterations were then plaintiff’s property (see Perlman v. Camp Hygiology, N. Y. L. J., *664 June 20, 1947, p. 2448, col. 2; Johyle Realty Corp. v. Ziman, N. Y. L. J., May 13,1948, p. 1795, col. 3).
Nothing in the record warrants the conclusion that, in making the alterations with the landlord’s approval and consent, defendant went beyond the powers afforded it by the provisions of the lease or caused any injury or acts of waste to be committed with respect to the premises. On the contrary, in keeping with the terms of the lease, defendant surrendered the premises with the alterations intact and with the entire premises in good condition and repair. It necessarily follows, therefore, that defendant fulfilled its complete obligation to plaintiff as the landlord’s successor in title.
In the opinion of the court, plaintiff’s remaining argument that there was an implied obligation to restore the premises to their original condition is without merit either in law or in fact. Where, as in the instant action, alterations were made by a tenant with the consent and knowledge of the landlord, there is no implied obligation to restore the premises to their original condition at the end of the term (Rasch, New York Law of Landlord and Tenant, § 603; New York Law of Landlord and Tenant, § 426; 51 O. J. S., Landlord and Tenant, § 411; 32 Am. Jur., §§ 804, 807; see, also, McGregor v. Board of Educ., 107 N. Y. 511; Polo v. International Trust Co., 166 Misc. 398, affd. 257 App. Div. 820; Perry v. Mott Iron Works Co., 207 Mass. 501; Cawley v. Jean, 218 Mass. 263; Savage v. University State Bank of Champaign, 263 111. App. 457; Arkansas Fuel Oil Co. v. Connellee, 39 S. W. 2d 99 [Texas]; Duvanel v. Sinclair Refining Co., 170 Kan. 483; Ann. 23 A. L. R. 2d 649 et seq.).
If, upon the execution of the lease, the parties thereto intended that the premises were to be surrendered in a particular condition other than as stated in paragraph 23 (supra), they could have and should have expressly so stated. No such covenant may now be implied as a matter of law. Likewise, the mere fact that plaintiff’s predecessor exhibited plans to plaintiff which were not in accord with the true condition of the premises is not sufficient to hold defendant liable as prayed for in the complaint. There was no attempt by defendant at any time to conceal from plaintiff the changes it made. Even a cursory physical examination of the premises by plaintiff would have revealed them.
Thus, in view of the facts above stated and upon all of the evidence before me, I hold that defendant has violated neither an express nor an implied duty of its tenancy and, therefore, is not liable for damages for the failure, at the termination of its lease, to restore the premises to their original condition.
*665 Accordingly, judgment is rendered in favor of defendant dismissing the complaint upon the merits.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.